Randall L. Jeffs, #12129
JEFFS & JEFFS, P.C.
90 North 100 East /P.O. Box 888
Provo, UT 84603
Telephone: (801) 373-8848
Email: rzjeffs@jeffslawoffice.com

*Attorney for Plaintiff*

### IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
### CENTRAL DIVISION

| | |
|---|---|
| SUZANNE MUSGROW, an individual,<br><br>    Plaintiff,<br>v.<br><br>FINWISE BANK, a Utah Corporation,<br><br>    Defendant. | **COMPLAINT**<br><br><br><br>*Civil No. 2:23-cv-00084* |

COMES NOW Plaintiff SUZANNE MUSGROW, by and through counsel, Randall L. Jeffs of the firm Jeffs & Jeffs, P.C., and complains of the Defendant as follows:

### PARTIES

1. Plaintiff is a female and resides in Salt Lake County, Utah.

2. Defendant FINWISE BANK (hereinafter "Finwise") is a Utah Corporation doing business in the State of Utah.

3. Defendant employed 15 or more employees during all relevant times.

### JURISDICTION AND VENUE

4. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) because all events giving rise to Plaintiff's cause of action occurred in Salt Lake County, Utah.

1

5. This action is brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq., and the Utah Anti-Discrimination Act of 1964, both as amended.

6. This Court has subject matter jurisdiction and supplemental jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367.

7. Jurisdiction over this action is also based on 42 U.S.C. § 2000e-5(f)(3).

8. Jurisdiction in this court is also proper against defendant pursuant to 28 U.S.C. §1343 because the acts complained of involve plaintiff's civil rights.

## GENERAL ALLEGATIONS

9. Plaintiff was employed by Defendant Finwise for many years.

10. Plaintiff had various responsibilities within Finwise during her many years of employment, eventually rising to be the Chief Risk Management Officer for Finwise.

11. In 2018 and 2019, Finwise was in the process of preparing itself to attempt to go public.

12. At the time, Finwise's executive team consisted of four male executives and three female executives.

13. The three female executives were not informed about major decisions and actions that needed to be taken in connection with the initial public offering. Rather, only the male executives were kept apprised of ongoing developments.

14. As part of the preparation to go public, all members of the executive team were required to disclose their compensation rates through a publicly available report.

15. Plaintiff was shocked to learn that she and the other two female executives (including Rachel Hadley) were being compensated at a rate far below their male counterparts. In some cases, less than one third their male counterparts.

16. In connection with her role as the Chief Risk Management Officer, Plaintiff oversaw a BSA audit of the bank's accounts and practices.

17. The BSA audit revealed several serious problems that would negatively affect the initial public offering.

18. Specifically, the BSA audit (conducted by Misty Riley) showed that two members of the bank's board of directors (Steve and Jim) had very large accounts with the bank that lacked incomplete information regarding ownership and location.

19. Additionally, the BSA audit showed that these director accounts were housed through off-shore account relationships with institutions located in the Cayman Islands.

20. These discrepancies can be indicia of either insider trading or money laundering.

21. Concerned by the information revealed in the BSA audit the Plaintiff immediately notified the Bank President (Kent) via text that the BSA audit had come back with some concerning issues and discrepancies that could have a direct impact on the bank's preparation for an initial public offering.

22. The President became irate at this news and accused Plaintiff of attempting to undermine the initial public offering.

23. The President informed the Plaintiff that he would take the matter up with Ms. Riley directly and that Plaintiff would no longer need to address the BSA audit, even though such compliance was part of her core responsibilities.

24. The following day the bank conducted an executive team meeting. During the meeting the President engaged in personal attacks towards the Plaintiff, accusing her of attempting to manufacture accusations of insider trading in the run-up before the initial public offering.

25. At nearly the same time, Ms. Hadley began expressing concerns of mistreatment of females in the workplace and discrimination towards female executives in their pay.

26. Ms. Hadley was terminated soon thereafter.

27. Following the treatment she received at the executive meeting, the Plaintiff took FMLA leave for a heart condition.

28. While on FMLA leave, Finwise hired the Plaintiff's replacement, even though she had not quit or been fired.

29. During her FMLA leave, Plaintiff expressed her concerns to Finwise that improper wage discrimination and mistreatment of women generally in the workplace was occurring.

30. When Plaintiff attempted to return from FMLA leave, Finwise failed to offer her a position of similar responsibility or compensation. Indeed, the compensation offered to Plaintiff was approximately 50% what she had been making prior to her taking FMLA leave.

31. Such an offer constituted constructive termination by Finwise.

**FIRST CAUSE OF ACTION**
**(Sexual Discrimination—Prima Facie)**

32. Plaintiff realleges and incorporates by reference herein the allegations of all foregoing paragraphs.

33. Plaintiff is female and a member of a protected group.

34. While employed by Defendant, Plaintiff was subjected to unlawful sexual discrimination in the form of wage disparities with her male counterparts who performed similar roles with similar levels of responsibility.

35. The wage discrimination and sexual harassment was made on the basis of Plaintiff's sex.

36. The actions and behavior the Plaintiff experienced, as described above, while employed by Defendants, violate Section 703 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1) and (2), and constitute an unlawful employment practice under Section 34A-5-106(1)(a)(i) of the Utah Antidiscrimination Act of 1964, both as amended.

37. The Plaintiff has suffered general and specific damages as a result of Defendants' actions, including wage loss, emotional expense and psychological damage.

38. Plaintiff is entitled to recover lost wages and benefits of employment, past and future, other economic losses, and other incidental expenses incurred by the actions alleged herein.

39. Plaintiff is entitled to a reasonable award of attorney fees, litigation expenses and costs pursuant to 42 U.S.C. § 2000e-5(k).

40. As a result of these violations, Plaintiff is further entitled to a punitive damages award against Defendants pursuant to 42 U.S.C. § 1981a(b)(1).

## SECOND CAUSE OF ACTION
### (Title VII of the Civil Rights Act - Retaliation)

41. Plaintiff realleges and incorporates by reference herein the allegations of all foregoing paragraphs.

42. In response to Plaintiff's complaints regarding unequal pay and her concerns over mistreatment of women in the workplace, Defendant took an adverse employment action against Plaintiff and constructively terminated her employment.

43. The retaliatory conduct of Defendants leading to and including the termination of Plaintiff violates Title VII of the Civil Rights Act of 1964, 42 U.S.C. §12203(a) and (b), and Section 34A-5-106(1)(a)(i) of the Utah Antidiscrimination Act of 1964, both as amended.

44. Plaintiff is entitled to general damages in an amount deemed appropriate by the Court but believed to be in excess of $500,000.

45. Pursuant to 42 U.S.C. § 2000e-5(k), Plaintiff is entitled to backpay, interest, attorney fees, litigation expenses and costs.

46. Because Defendant acted with reckless disregard of Plaintiff's protected rights Plaintiff is further entitled to a punitive damages award and other damages including but not limited to, future pecuniary loss, emotional pain, suffering, mental anguish and loss of enjoyment of life, against Defendants pursuant to 42 U.S.C. § 1981a(b).

### THIRD CAUSE OF ACTION
### (FMLA Retaliation/Discrimination for FMLA Leave - 29 U.S.C. § 2615)

47. Plaintiff re-alleges and incorporates by reference herein the allegations of all foregoing paragraphs.

48. Plaintiff took qualified FMLA leave based on her medical condition.

49. Upon her attempt to return, Defendant took no remedial action to accommodate her health concerns, and failed to offer her employment of equal responsibility and equal pay.

50. Instead, Defendant offered her employment with greatly reduced responsibilities at roughly half of her prior rate of pay.

51. Such an action constituted constructive termination and an adverse employment action by Defendant.

52. These adverse employment actions taken by Defendant are causally connected to the Plaintiff seeking and obtaining protected medical leave under FMLA.

53. Defendant has retaliated against Plaintiff for engaging in an activity protected under the FMLA.

54. As a result of Defendant's actions, Plaintiff has suffered damages, including the denial of her salary and employment benefits from the date of termination, including the loss of her right to future pension benefits, loss of life insurance benefits, loss of health insurance benefits, and loss of future wages and other benefits, in an amount to be determined by the Court but believed to be in excess of $500,000.

55. Pursuant to FMLA, Plaintiff is also entitled to additional liquidated damages in an amount equal to her compensatory damages in excess of $500,000.

56. Pursuant to 29 U.S.C. § 2617 (3), Plaintiff requests that attorney's fees, litigation expenses, and costs of this action be paid by the Defendant.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff asks the Court for relief as follows:

1. On the first, second, and third causes of action:

(a) For a determination by the Court that Defendant has discriminated against Plaintiff on the basis of her gender in violation of Title VII of the Civil Rights Act of 1964 and the Utah Antidiscrimination Act of 1964, both as amended;

(b) For a determination that Defendant has retaliated against Plaintiff for her opposition to Defendants acts of discrimination in violation of Title VII of the Civil Rights Act of 1964 and the Utah Antidiscrimination Act of 1964, both as amended, and 42 U.S.C. § 2000e-5;

(c) For a determination that Defendant has retaliated against and discriminated against Plaintiff for her use of FMLA protected activity in violation of the FMLA;

(d) For damages in an amount to be determined by the Court to make Plaintiff whole by compensating her for past and future pecuniary losses, including expenses, lost past and future earnings and benefits of employment, and such other losses as are proved at trial but believed to be in excess of $500,000;

(e) For compensatory damages for nonpecuniary losses, including emotional injury, pain and suffering, mental anguish, humiliation, and embarrassment, and loss of enjoyment of life;

(f) In relation to the FMLA violations, for liquidated damages in an amount equal to Plaintiff's compensatory damages;

(g) For punitive damages pursuant to 42 U.S.C. § 1981a(b)(1);

(h) For reasonable attorney's fees, litigation expenses and other costs of the action pursuant to 42 U.S.C. § 2000e-5(k) and the FMLA;

    (i) For pre-judgement and post-judgement interest, as appropriate, on all amounts die to Plaintiff as a result of this action; and

  2. For such other and further relief, including equitable relief, as may be appropriate under the circumstances.

  DATED and SIGNED this 2nd day of February, 2023.

                JEFFS & JEFFS, P.C.

                /s/ Randall L. Jeffs
                *Attorneys for Plaintiff*